UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DARYL S. GRUKA
                              Plaintiff,

    v.                                                **DECISION AND ORDER**
                                                      14-CV-795S

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                              Defendant.
_____


1.      Plaintiff Daryl S. Gruka challenges an Administrative Law Judge's ("ALJ")

determination that he is not disabled within the meaning of the Social Security Act ("the

Act").  Plaintiff alleges that he has been disabled since March 10, 2010, due to back and

knee pain, lower leg limitations related to burn scars, and obesity.  Plaintiff protectively

filed applications for Disability Insurance Benefits (DIB) and Supplemental Security

Income (SSI) benefits on October 20, 2011, which were initially denied.  On October 11,

2012, ALJ Timothy M. McGuan conducted a hearing at which Plaintiff, who was

represented by counsel, and a vocational expert appeared and testified.  The ALJ

issued an unfavorable decision on October 24, 2012, which the Appeals Council

vacated and remanded to the ALJ for evaluation of Plaintiff's obesity pursuant to SSR

02-1p, for further consideration of Plaintiff's Residual Functional Capacity (RFC), and to

obtain supplemental evidence from a vocational expert to determine examples of

appropriate jobs available in the national economy.  (R. 111-112). [1]

_____
[1] Citations to the administrative record are designated as "R."

2.      Following the remand order, Plaintiff appeared with counsel on February 6, 2013, for a second hearing before ALJ McGuan.  At the time of the second hearing, Plaintiff was 26 years old, with at least a high school education, and no past relevant work.  (R. 25).  Plaintiff and an impartial vocational expert testified.  On February 13, 2013, the ALJ issued a decision again finding that Plaintiff was not disabled.  The Appeals Council denied Plaintiff's request for review on July 24, 2014.  Plaintiff filed the current action on September 22, 2014, challenging the Commissioner's final decision.[2]

3.      On March 3, 2015, Plaintiff filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket No. 7).  On March 23, 2015, the Commissioner filed a Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief. (Docket No. 9).  Plaintiff filed a reply on May 26, 2015 (Docket No. 10), at which time this Court took the matter under advisement without oral argument.  For the following reasons, Plaintiff's motion is denied, and Defendant's motion is granted.

4.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a

---

[2] The ALJ's February 13, 2013 decision, which is the subject of this action, became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).   Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.   See <u>Rutherford v. Schweiker</u>, 685 F.2d 60, 62 (2d Cir. 1982).

5.     "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." <u>Williams on Behalf of Williams v. Bowen</u>, 859 F.2d 255, 258 (2d Cir. 1988).   If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." <u>Rosado v. Sullivan</u>, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).   In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." <u>Valente v. Sec'y of Health and Human Servs.</u>, 733 F.2d 1037, 1041 (2d Cir. 1984).

6.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act.   <u>See</u> 20 C.F.R. §§ 404.1520, 416.920.   The United States Supreme Court recognized the validity of this analysis in <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.     This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa

v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.     Although the claimant has the burden of proof as to the first four steps, the

Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S.

at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step of this

inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the

claimant's job qualifications by considering his physical ability, age, education and work

experience.   Second, the Commissioner must determine whether jobs exist in the

national economy that a person having the claimant's qualifications could perform.  See

42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f);  Heckler v. Campbell, 461 U.S. 458,

460-61, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.     In this case, the ALJ made the following findings with regard to the five-

step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity

since March 10, 2010, the alleged onset date (R. 20); (2) Plaintiff's patella-femoral

syndrome, status post full thickness burns to his lower extremities in 1995, L5-S1 disc desiccation with a protrusion that does not compromise any nerve roots, left knee sprain with 40% loss of use, and obesity are "severe" impairments within the meaning of the Act (id.); (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 21); (4) Plaintiff has the residual functional capacity ("RFC") to perform light work,[3] except he is able to sit for eight hours, stand and walk up to three hours, lift up to fifteen pounds, should never climb ladders or ropes but can occasionally climb stairs, can frequently balance but should avoid kneeling and crawling, and should avoid exposure to the cold (R. 21); and (5) Plaintiff can perform jobs that exist in significant numbers in the national economy, including as an addresser or a telephone quotation clerk.  (R. 25).  Thus, Plaintiff was not under a disability, as defined by the Act, at any time from the date of his application through February 13, 2013, the date of the ALJ's decision.  (R. 23).  Plaintiff contends the determination that he is not disabled is not supported by substantial evidence and is based on multiple errors of law.

10.     Plaintiff primarily argues that the ALJ erred in his assessment of the various medical opinions.  When determining how much weight to afford any medical opinion in the record, "[r]egardless of its source," an ALJ must consider certain factors, including "(i) the frequency of examination and the length, nature and extent of the

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. §§ 414.967(b), 404.1567(b).

treatment relationship; (ii) the evidence in support of the … opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion."  Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. §§ 404.1527(c), 416.927(c).  As this Court has previously recognized, an ALJ "does not have to explicitly walk through these factors, so long as the Court can 'conclude that the ALJ applied the substance of the treating physician rule ... and provide[d] 'good reasons' for the weight she gives to the treating source's opinion.'"  Hall v. Colvin, 37 F.Supp.3d 614, 625 (W.D.N.Y. 2014) (quoting Halloran, 362 F.3d at 32); see Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (ALJ need not undertake a "slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear").

11.    Plaintiff first asserts that the ALJ erred in ignoring and not evaluating several favorable opinions issued in 2010 by Plaintiff's treating orthopedic surgeon, Lisa Daye, MD, and failed to address the six regulatory factors.  The treating physician rule requires an ALJ to give controlling weight to "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s)" if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Halloran, 362 F.3d at 32.  The Commissioner must provide a claimant with "good reasons" for the lack of weight attributed to a treating physician's opinion.  Schaal v. Apfel, 134 F.3d 496, 503 – 504 (2d Cir. 1998); Hall, 37 F.Supp.2d at 625.

Dr. Daye specified functional limitations in four of her treatment notes, which, according to Plaintiff, would preclude even sedentary work.  (Citing R. 439, 443, 446-7, 451).  These treatment visits occurred in May through September of 2010, following Plaintiff's work-related left knee sprain, and in connection with his worker's compensation claim.  (See id.).  Dr. Daye initially rated Plaintiff's degree of disability as mild-moderate (33 1/3%), and described Plaintiff's work limitations as: Lift/Carry < 10 lbs; Push/Pull < 10 lbs force; Kneel/Squat/Crawl: not at all; Stand/Walk: alternate position as needed; Ladder/Stair Climb: not at all.  (Id.).

In October of 2010, at Dr. Daye's direction, Plaintiff underwent a Functional Capacity Evaluation (FCE), which is a test intended to "establish safe physical demand levels related to work."  (R. 415).  The FCE results indicated that Plaintiff "demonstrated the ability to perform sedentary demand level work and up to fifteen [pounds] of light physical demand work."  (Id.).  In particular, Plaintiff was capable of static standing and walking occasionally (3 hours of an 8 hour day), static sitting continuously (8 hours of an 8 hour day), stair climbing rarely (0.5 hours of an 8 hour day), and could use his fingers and reach frequently (5.5 hours of an 8 hour day).  (R. 416-417).  Significantly, he was found to have good ability for static sitting, average bilateral grip/pinch strength, and above average bilateral hand coordination.  (R. 416).  The results also showed he should avoid step ladder climbing, kneeling, and crawling.  (Id.).  Additional limiting factors described in the report were: mild limitation in balance, moderate limitations in walking, elevated work/extended reaching in standing, rotation in standing, standing bent forward, and static standing; and major limitation in stair climbing.  (Id.).  The FCE report also states that Plaintiff "did demonstrate physical signs that pain was present

during the test procedure," he "had few complaints of pain during lifting and ambulation activities," and he "appear[ed] to have his symptoms in control." (Id.).

Dr. Daye subsequently adopted the less-restrictive FCE findings as Plaintiff's work related restrictions and released him to light duty work, noting, however, that no light duty work was available through his employer. (R. 430, 436). It is clear that the ALJ reviewed and discussed Dr. Daye's treatment notes in his paragraph about Excelsior Orthopedics, Dr. Daye's medical practice. (R. 22-23). In fact, the ALJ did not ignore or give limited weight to Dr. Daye's opinions, rather he noted certain of Dr. Daye's findings, including Plaintiff's normal gait and full strength in the left leg (citing R. 441, July 26, 2010 visit); that Plaintiff was advised to do activities he tolerated and continue his home exercises (citing R. 430, January 21, 2011 visit); and that Plaintiff was found to reach maximum medical improvement with 30% loss of use for his left knee (citing R. 427, February 18, 2011 visit).

Plaintiff argues that the Commissioner makes an improper *post hoc* rationalization – that Dr. Daye adopted the FCE results – for the ALJ's failure to specifically address the earlier, more restrictive limitations. Here, Dr. Daye's earlier restrictions were no longer in effect after she adjusted her assessment of Plaintiff's limitations to match the FCE findings on October 29, 2010. (R. 436). Thus, the ALJ reasonably did not discuss them specifically or include them in his RFC determination. Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir., 1983) (ALJ need not always "reconcile explicitly every conflicting shred of medical evidence"); see Cichocki v. Astrue, 729 F.3d 172, 178 (2d Cir. 2013) ("ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits us to glean the rationale of an ALJ's

decision"), citing <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1040 (2d Cir. 1983).  Further, the ALJ gave the FCE results great weight "in light of it being a valid test and a true representation of [Plaintiff's] abilities," and because the results are "supported by treatment records for Excelsior Orthopedics."  (R. 23).  Accordingly, the ALJ neither failed to address Dr. Daye's treating source opinion, nor did he run afoul of his duty to give "good reasons" for the limited weight given to it because he did not discount it. Just like Dr. Daye, the ALJ gave great weight to the FCE results.  (<u>Id.</u>; <u>see</u> R. 436). Accordingly, the ALJ's treatment of Dr. Daye's opinion does not warrant remand.

12.     Plaintiff next argues that the ALJ erred in giving little weight to a medical source statement from Plaintiff's primary care physician, Paul Dippert, D.O., which was provided on a check-box type "Physical Capacities Evaluation" form dated January 29, 2013.  (R. 569-570).  Plaintiff first sought treatment at Dr. Dippert's practice, Southtowns Family Practice, on April 27, 2012, to "establish a treating relationship."  The record contains notes from three visits.  (R. 531, 534, 539).  On the Physical Capacities Evaluation form, Dr. Dippert opined that Plaintiff was only capable of standing for twenty minutes at a time, sitting for fifteen minutes at a time, and walking one-quarter mile at a time.  (R. 569).  He also indicated that Plaintiff should never stoop, kneel, crouch, crawl, or climb, and stated Plaintiff was limited to lifting or carrying five to seven pounds.  (<u>Id.</u>). For the earliest date of onset of these limitations, Dr. Dippert provided March 10, 2010, the date of Plaintiff's knee injury.  (R. 570).

Plaintiff contends that the ALJ's analysis is insufficient because he failed to explicitly apply the six regulatory factors when he discounted this treating source opinion.  As noted above, no such stringent requirement exists in this Circuit.  Where,

as here, the ALJ's rationale is apparent in the decision, a failure to list each factor is not cause for remand.  Hall, 37 F.Supp.2d at 625; Atwater, 512 F. App'x at 70.  The ALJ gave "little weight" to Dr. Dippert's opinion expressed on the Physical Capacities Evaluation form "in light of the objective records from the doctor that precedes this conclusion."  (R. 23).  The ALJ found that "Dr. Dippert even doubted the truth about [Plaintiff]'s complaints on several occasions," that in "June 2012, Dr. Dippert noted that [Plaintiff]'s complaints of pain were out of proportion to the injury and the duration of the complaints," and based on Plaintiff's "exaggerated behavior, that [Dr. Dippert] was somewhat suspicious of malingering."  (R. 23, citing R. 541).  In addition, the ALJ noted Dr. Dippert reviewed an MRI of Plaintiff's knee in April 2012, which showed no significant internal derangement and also stated Plaintiff reported taking no medication. (See R. 23, citing R. 532).  The ALJ erroneously attributes this statement to Dr. Dippert, when, in fact, Plaintiff saw Dr. Dippert's colleague, Dr. MacLean, at his April 2012 visit. (R. 532).  Notwithstanding this error, Dr. Dippert's own treatment notes, dated May 10, 2012, and June 11, 2012, indicate the same opinion: the recent x-rays, MRIs, and CT scans were normal.  (R. 534, 541).  Finally, the ALJ found Dr. Dippert's Physical Capacities Assessment to be a "drastic change in opinion."  Therefore, the ALJ's rationale rested on inconsistencies between Dr. Dippert's new, restrictive limitations and his earlier opinions about Plaintiff's alleged symptoms and the benign objective medical evidence.

The ALJ went on to speculate generally about possible motives for such a change in a treating physician's opinion, including helping a sympathetic patient or yielding to an unrelenting one.  (R. 23).  Plaintiff relies on this Court's opinion in Nix v

Astrue for the proposition that "in the absence of a more specific reason to suspect the veracity of a medical report, a doctor 'advocat[ing] his patient's cause is not a good reason to reject his opinion as a treating physician.'" Nix v. Astrue, No. 07-CV-344, 2009 WL 3429616, at *10 (W.D.N.Y. Oct. 22, 2009) (ALJ failed to follow treating physician rule in discounting treating source opinions based on erroneous credibility analysis of Plaintiff's subjective complaints), quoting McGoffin v. Barnhart, 288 F.3d 1248, 1253 (10th Cir. 2002).   The Court finds this argument unavailing.   Speculation aside, the ALJ sufficiently articulated the "more specific" reasons, as set forth above, for not granting controlling weight to Dr. Dippert's assessment on the Physical Capacities Evaluation.   Id.; see 20 C.F.R. § 404.1527(c)(6) ("we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion").

The Court notes that the form opinion was dated approximately six months after Plaintiff's most recent treatment visit, and references no supporting documentation for what the ALJ reasonably found to be a "drastic change."   (See R. 23); see also Halloran, 362 F.3d at 31, n.2. (finding a similar check box type form to be only marginally useful).   Certain of the noted restrictions, including climbing, kneeling, and crawling are supported elsewhere in the record and are included in the RFC assessment.   (R. 21).   The extreme limits on standing, walking, and sitting, however, are not reflected in other opinions or in the Plaintiff's own statements, and, significantly, do not reflect Dr. Dippert's previous notes.   (R. 534, 539); see Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (noting that it is the Commissioner's role to resolve "genuine conflicts in the medical evidence," and that a treating physician's opinion is

generally "not afforded controlling weight where the treating physician issued opinions that are not consistent with the opinions of other medical experts").  Moreover, where, as here, "there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,'" the ALJ was not obligated to request additional information from Dr. Dippert.  Rosa, 168 F.3d at 79 n. 5.

13.    Plaintiff also finds fault with the ALJ's treatment of two consultative opinions.  First, Plaintiff argues that the ALJ erroneously discounted the January 19, 2012 opinion of consultative examiner, Hongbiao Liu, MD.  The ALJ recounted Dr. Liu's notes that Plaintiff alleged low back pain and left knee pain, and that Plaintiff walked four miles a day for exercise.  (R. 24, citing R. 504).  The ALJ considered that Dr. Liu gave Plaintiff a "fair prognosis," and assessed Plaintiff with "mild to moderate limitations for routine activities," and opined he should "avoid bending, kneeling, repetitive motion, and jumping."  (Id.).  The ALJ gave this opinion "limited weight … in light of [the Dr.'s] vague medical source statement conclusions, except those that relate to the knee."  (R. 24).  He stated further that the opinion is "inaccurate in light of back pain claims without any evidence of impairment."  (Id.).

Plaintiff argues that the ALJ had a duty to recontact Dr. Liu to clarify the opinion, rather than dismissing it based on the supposedly vague limitations.  Although the Regulations address recontacting a claimant's treating sources, there is no requirement that an ALJ recontact a consultative examiner for clarification.  Scott v. Colvin, No. 13-CV-6277 MAT, 2014 WL 2818668, at *8 (W.D.N.Y. June 23, 2014); see 20 C.F.R. §§ 404.1512(e), 416.912(e).  Here, the ALJ acted within his discretion by affording Dr. Liu's opinion "limited weight" based on the record before him at the time of his decision.

12

Plaintiff next argues that Dr. Liu's restrictions are supported by his clinical findings, noting also that the ALJ found his back pain to be a severe impairment. Plaintiff further asserts that Dr. Liu's limitation on bending, which Plaintiff equates to "stooping" (R. 504), would largely eliminate the number of unskilled sedentary jobs available. See SSR 96-9p ("a complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply"). Dr. Liu recorded a positive Straight Leg Raise (SLR) test on both sides, in both supine and sitting positions (R. 503), which Plaintiff asserts confirms the presence of a herniated lumbar disc and nerve root impingement. Yet, Dr. Liu also recorded in his examination findings that Plaintiff "appeared to be in no acute distress," had a normal stance, "used no assistive devices," required no help in changing for the exam or getting on and off the exam table, and was "able to rise from chair without difficulty." (R. 502). He also stated that Plaintiff "cannot perform squat without cane assistance," and found Plaintiff's lumbar spine range of motion was "flexion/extension both 70 degrees; lateral flexion, both left and right, 20 degrees; rotation, both left and right, 20 degrees." (R. 503). "Genuine conflicts in the medical evidence are for the Commissioner to resolve," Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir.2002), and there is no requirement that the ALJ accept every limitation in the opinion of a consultative examiner. See Pellam v. Astrue, 508 F. App'x 87, 89 (2d Cir.2013) (ALJ properly declined to credit certain conclusions in CE's opinion that were inconsistent with other evidence of record).

Finally, Plaintiff contends that the ALJ improperly relied on Dr. Liu's "vague" statement that "claimant could walk up to four miles per day" in discrediting Plaintiff's

allegations.   (See R. 501).   The Court finds that the ALJ's interpretation of this statement is supported by the record: on May 16, 2012, Plaintiff reported to his physical therapist that he walks up to four miles a day for exercise, despite also reporting his pain level at an 8-9/10 in his lower back.  (R. 526, 538).   Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford, 685 F.2d at 62.

In the context of the sufficient record, which contains multiple treating source opinions and objective medical test data, giving limited weight to Dr. Liu's opinion did not create a gap in the record requiring remand for clarification.  Moreover, independent review of Dr. Liu's opinion reveals nothing so favorable to Plaintiff's case that detracts from the substantial evidence supporting the ALJ's decision.   Accordingly, Plaintiff's arguments on this point are unpersuasive, and the Court finds no reversible error regarding the ALJ's treatment of Dr. Liu's consultative opinion.

14.   Plaintiff also argues that, on remand, the ALJ erroneously failed to address the January 13, 2011 opinion of consultative examiner John Schwab, D.O., which the ALJ afforded "significant weight" in his first decision.  (See R. 102).  The Commissioner's regulations expressly provide that, "[r]egardless of its source, we will evaluate every medical opinion we receive," 20 C.F.R. §§ 404.1527(c), 416.927(c).

Dr. Schwab found that Plaintiff had "decreased sensation to light touch in the palmar aspect of his right hand including all fingers, except thumb," but also stated: "hand and finger dexterity intact.   Grip strength 5/5 bilaterally.   He is able to button[] a button, zip[] a zipper, use Velcro with each hand, tie a bow, and tie a bow with both hands."  (R. 422).   Dr. Schwab opined that Plaintiff "should avoid any activity that

require[s] normal sensation in both hands." (R. 423).   Plaintiff asserts that the ALJ's

failure to discuss this opinion was not harmless error because the "feeling limitations"

stated by Dr. Schwab do not appear elsewhere in the ALJ's decision.   Cf. Miller v.

Colvin, 85 F. Supp. 3d 742, 754 (W.D.N.Y. 2015) (finding no reversible error where ALJ

did not expressly acknowledge certain records but Plaintiff's reported symptoms were

"largely reflected elsewhere in the ALJ's decision").   Indeed, the ALJ's decision does not

reflect Plaintiff's hand-related limitations; however, neither does the record.

In addition to his leg burns, Plaintiff suffered a burn to his right wrist/palm area

when he was nine-years-old.   Plaintiff is right-handed, and testified that he has some

limitations, "a little bit," with his right hand, including numbness or "desensitization," that

he "feel[s] things with it, but not as much as [he] should," and that his thumb and pinkie

"don't always react properly."   (R. 56).   He also stated that he "occasionally" drops

things.  (R. 57).   Nevertheless, various treating and examining sources noted his normal

hand strength and dexterity, including Dr. Liu (R. 503: "hand and finger dexterity intact",

"grip strength 5/5 bilaterally") and Dr. Dippert (R. 541: "grip 5/5 bilaterally"; see also 569:

indicating ability for continuous use of hands for fine manipulation), as well as the FCE

results discussed above.  (R. 416).   Also, despite recording Plaintiff's "chronic sensory

impairment in the lower extremities" at the site of his burn scars, Plaintiff's neurologist,

Steve Dofitas, MD, did not mention similar issues with Plaintiff's right hand.  (R. 567).

Moreover, the ALJ stated that his RFC finding was made "[a]fter consideration of

the entire case record," and that he "considered opinion evidence in accordance with"

the Regulations.  (R. 21).   The Court has no reason to doubt these statements.   See,

e.g., Fisher v. Barnhart, 363 F. Supp. 2d 153, 163 n.10 (D. Conn. 2005) (noting that the

ALJ "certified that he 'considered all of the medical opinions in the record regarding the severity of the claimant's impairments.'").   In fact, as Plaintiff points out, the ALJ discussed Dr. Schwab's opinion in the first decision; thus, the record demonstrates that he did not simply overlook this evidence.   (See R. 102).   However, Plaintiff mischaracterizes the weight the ALJ initially gave to this opinion.   In the first decision, the ALJ stated "[s]ignificant weight is given to Dr. Schwab, *accept [sic] for the need to avoid activity requiring feeling.*   There is nothing in the record that shows he has any problems with his right hand."   (Id., emphasis added).   Further, although in reference to his legs, the ALJ aptly notes in the current decision that Plaintiff's healed burn scars were "present at the same level of severity prior to the alleged onset date and did not prevent him from working in the past, which strongly suggest[s] that it would not prevent him from working currently."   (R. 22; see Plaintiff's testimony R. 57).

Therefore, the Court finds no reversible error because the ALJ's implicit rejection of this limitation on remand is supported by substantial evidence, and an analysis of Dr. Schwab's opinion would not have changed the ALJ's adverse determination.   See Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) (finding no reversible error where ALJ failed to discuss an opinion that was "not significantly more favorable" to claimant); see also Greene v. Colvin, 936 F.Supp.2d 216, 226 (W.D.N.Y. 2013) (An ALJ "is not required to discuss all the evidence submitted, and [his] failure to cite specific evidence does not indicate that it was not considered.").

15.   Finally, the Appeals Council remanded the ALJ's original decision, in part, for the ALJ to consider Plaintiff's obesity pursuant to Social Security Ruling 02-1p.   (R. 18).   Plaintiff asserts that the ALJ failed to specifically address Plaintiff's obesity at

Steps Four and Five, <u>citing</u> <u>Hogan v. Astrue</u>, 491 F. Supp. 2d 347, 355 (W.D.N.Y. 2007) (remanding on other grounds, but noting error in ALJ's decision where treating, examining, and reviewing physicians all noted plaintiffs obesity, and obesity was found to be a severe impairment, but it was unclear whether the ALJ considered plaintiff's obesity at steps four and five).   Plaintiff argues that, despite finding obesity to be a severe impairment at Step Two, the ALJ mentions obesity in merely boilerplate fashion, and the RFC is identical to the previous RFC, in which the ALJ erroneously failed to consider obesity.  (Compare R. 21, 100).

Obesity constitutes a "severe impairment" when "alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities."  SSR 02-1p.  To be found severe, a claimant's obesity must be more than a slight abnormality, and have more than a minimal effect on his ability to perform basic work activities.  <u>Id.</u> Nevertheless, an ALJ's "obligation to discuss obesity, alone or in combination with other impairments, diminishes where evidence in the record indicates the claimant's treating or examining sources did not consider obesity as a significant factor in relation to the ability to perform work related activities."  <u>Farnham v. Astrue</u>, 832 F.Supp.2d 243, 262 (W.D.N.Y. 2011); <u>Thompson v. Astrue</u>, No. 12-CV-111S, 2013 WL 265239, at *3 (W.D.N.Y. Jan. 23, 2013) (ALJ had no duty to discuss claimant's obesity where "[n]either her treating sources nor the examining sources attribute any symptoms, limitations, or exacerbation of other impairments" to her weight).

In this case, the height and weight evidence in the record establishes that Plaintiff's Body Mass Index measurement fell into the obese range during the relevant

period (see, e.g., R. 567, 539, 502).   Contrary to Plaintiff's claims, the ALJ did not

simply refer to obesity in "boilerplate fashion."   At Step Four, the ALJ noted that "there is

no longer a separate listing for obesity, but stated that he "considered the effect of

obesity" on Plaintiff's other impairments.   (R. 21, citing SSR 02-1p).   In the RFC

analysis, the ALJ noted that obesity "must be considered in terms of how a medically

determinable impairment, which is severe, is further impacted by the obesity," but that

"obesity itself is not considered the disabling impairment."   (R. 24).   The ALJ found that

Plaintiff stood 5'8" tall and weighed between 226 and 230 pounds, but that at the most

recent treatment visit, on January 4, 2013, his weight was 221 pounds.   (Id.).   Thus, the

ALJ concluded that the record shows Plaintiff's "weight [was] fairly stable with no

significant weight gain," and further that "he fell within this weight range when he began

to report low back pain, and was found to have no more than moderate functional

limitations."   (Id.).[4]   Finally, the ALJ affirms that he considered the effect of obesity

according to SSR 02-1p, and that "obesity affects [Plaintiff's] exertional ability to the

degree that he can do no more than light work."   (Id.).   Here, the ALJ's discussion

reflects the record, which is "devoid of any suggestion that [Plaintiff's] weight negatively

impacted [his] ability to work."   Thompson, 2013 WL 265239 at *3.

Plaintiff also argues that adding obesity as a new severe impairment should have

some effect on his RFC, yet the ALJ found no limitations from obesity and left the RFC

unchanged.   Citing SSR 96-3p ("severe" impairments significantly limit an individual's

physical or mental abilities to do basic work activities).   Despite the ALJ affording

Plaintiff the benefit of the doubt and finding his obesity to be a severe impairment, the

---

[4] The Court notes that Plaintiff's weight varied somewhat more than the ALJ's decision reflects, from a low of 200 pounds (self-reported) in 2010 to a recorded high of 238 pounds in January 2012; curiously, so did his height, which ranged from 5'8" to 6'.   (R. 399, 415, 421, 425, 476, 492, 502, 550, 553, 567).

record contains no evidence that any treating or examining source mentioned Plaintiff's obesity or "attribute[d] any symptoms, limitations, or exacerbation of other impairments to [Plaintiff]'s weight." Thompson, 2013 WL 265239 at *3. Where, as here, the ALJ's decision "adopts the physical limitations suggested by reviewing doctors after examining the Plaintiff, the claimant's obesity is understood to have been factored into their decisions." Id. at *4, quoting Cruz v. Barnhart, No. 04–CV–9011, 2006 WL 1228581, at *9 (S.D.N.Y. May 8, 2006) (citations omitted). Accordingly, in light of this record, the ALJ fulfilled his duty to consider Plaintiff's obesity and no modification of the RFC was necessary where "there is no record evidence that obesity negatively affected [his] functional capacity during the alleged disability period." Thompson, 2013 WL 265239 at *4.

16.    After carefully examining the administrative record, this Court finds that substantial evidence supports the ALJ's decision, including the objective medical evidence and medical opinions contained therein. This Court is satisfied that the ALJ thoroughly examined the record and afforded appropriate weight to all of the medical evidence in rendering his decision that Plaintiff is not disabled within the meaning of the Act. Finding no reversible error, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking similar relief.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 7) is DENIED;

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 9) is GRANTED;

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated: December 26,  2015
         Buffalo, New York

<u>/s/William M. Skretny</u>
WILLIAM M. SKRETNY
United States District Judge